GASS v. SWEENEY.   (No. 859.)

(Court of Civil Appeals of Texas. El Paso. May 23, 1918.)

1. TRIAL ☞350(8) — SPECIAL INTERROGATORIES — NECESSITY OF REQUEST — ADMITTED FACTS.

Where both parties to an action admit that certain goods were sold at an agreed price, court's refusal to submit special issue as to whether such goods were sold at an agreed price is not error.

2. TRIAL ☞351(5) — SPECIAL INTERROGATORIES—QUESTIONS ALREADY SUBMITTED.

Refusal of court to submit a special issue involving a question covered by a special issue submitted was not error.

3. TRIAL ☞350(4) — SPECIAL INTERROGATORIES—FORM OF.

Refusal to submit special issue, "was there a difference in defendant's favor between the scale and compress weights," was not error; such issue submitting question of law and improperly presenting question of whether compress weights were to govern instead of scale weights.

4. APPEAL AND ERROR ☞930(3) — PRESUMPTION—JUDGMENT—FINDINGS.

Under Rev. St. 1911, art. 1985, providing that failure to submit issue is not reversible error unless requested, where court does not submit special issue as to a question on which evidence is conflicting, it will be presumed to have made a finding on such question in support of the judgment.

Error to Nolan County Court; Jno. H. Cochran, Jr., Judge.

Action by E. A. Sweeney against Charles L. Gass. Judgment for plaintiff, and defendant brings error. Affirmed.

Grisham & Grisham, of Sweetwater, for plaintiff in error. Beall & Douthit and Jas. L. Spiller, all of Sweetwater, for defendant in error.

HIGGINS, J. Sweeney brought this suit against Gass alleging that on September 29, 1916, he purchased from Gass 50 bales of cotton, weighing 25,411 pounds, for 14.90 cents per pound on middling basis; that Gass delivered the cotton to H. J. Sargent, who paid for same in Sweeney's behalf; that Gass represented to Sargent that the contract price for the cotton was $14^{15}/_{16}$ cents per pound and Sargent paid for same at that price, which was an overcharge of $9.52, and for which amount recovery was sought. It was further alleged that on October 4, 1916, he purchased from Gass 50 bales of cotton at an agreed price of 15.65 cents per pound on middling basis, less 17½ cents per 100 pounds, and less 35 cents per bale f. o. b. charges; that in payment for the cotton he paid a draft for

$4,273.55 drawn on him by Gass; that the amount of the draft exceeded the contract price by $287.83, for which amount recovery was also sought. The case was tried before a jury and submitted upon one special issue as follows: "What was the agreed price per pound for the October, 1916, lot or shipment of cotton?" The answer was, "15.65 cents." Upon this answer judgment was rendered for the $9.52 sued for on account of the September delivery and for the $287.83 sued for on account of the October delivery.

Gass answered as follows:

"This defendant admits that the facts as alleged in paragraph 1 of plaintiff's petition is in part true, and admits that the error as recited therein was in fact made and for which this defendant would be liable to the plaintiff in the sum of $9.52 but for the facts as hereinafter set forth, viz.: That the weights upon which defendant sold the cotton to the plaintiff were yard weights and not compress weights, and that the difference in the yard weights and compress weights would leave a balance due the defendant as will hereinafter more fully appear.

"Defendant says that as a matter of fact he sold plaintiff the cotton as mentioned in the second paragraph of plaintiff's petition; that he sold it to the plaintiff for the sum for which the draft was drawn and paid by plaintiff; that the price was agreed upon by and between plaintiff and defendant over the telephone and was reduced to a memorandum by the defendant at the time, and that the draft was drawn for the exact amount as agreed upon, save and except that defendant knew at the time that the weights used in making the estimate were the yard weights and knew that plaintiff or the defendant might be called upon to correct the same to correspond to the compress weights which govern and control in such sales, and defendant understood that same should govern in this sale and each of the sales involved in this transaction.

"Plaintiff paid off the drafts in each of the instances here involved, but has not at any time furnished the defendant with the weights from the compress, and defendant here alleges that by said compress weights there was and is a gain in the weights of an average of five pounds per bale; that by reason of the prices as agreed upon by and between the plaintiff and defendant and because of the difference in said weights as aforesaid the plaintiff is further due the defendant the sum of $35.

"Defendant says that he did not at any time agree to sell to the plaintiff the cotton mentioned in subdivision 2 of said petition for the prices named therein.

"Defendant says that for the facts herein averred plaintiff should not recover any sum whatsoever from the defendant, but, on the contrary, the plaintiff is due the defendant the sum of $—— less the said sum of $9.52, which defendant offers to credit on the sum due defendant by the plaintiff."

In his testimony he admitted that he was due Sweeney $9.52 on the September delivery, subject to a correction in weights. He further testified:

"It is customary in the cotton business to sell the cotton to be delivered according to compress weights, and any sale made according to yard weights is subject to correction to conform with the compress weights. I have been selling on the market here for three seasons, and know the average difference between compress weights and yard weights. I understood that compress weights was to govern in this sale, as was usual and customary in such matters. There is a difference of about five pounds per bale between the yard weights and the compress weights, in favor of the compress weights. * * *

"I made the sale to the plaintiff in question of the second batch of cotton mentioned for 16.65 cents per 100 pounds. I made the sale over the telephone to the plaintiff. I had talked with him. I knew his voice. I recognized what he said, and he quoted me a price of 16.65 cents per pound for middling cotton. I did not sell it to him, nor agree to sell it to him for 15.65. I drew the draft for the exact amount for which I sold it to the plaintiff. The price of 15.65 was very nearly what I was giving for it on the market in Sweetwater, and cotton was increasing in value, and I would not have sold except for the profit at the time. In this particular sale, it was made specifically too on the yard weights and the sale was unconditionally for this price. * * *

"I am sure that the plaintiff quoted me a price of 16.65 on this cotton. My book was before me when I had the conversation over the telephone, and I made an entry in my cotton book at the time showing the price for which I had sold it, and the entry was made correctly at the time. I know same to be correct, and it shows the sale at 16.65 and not 15.65."

The invoice of the October delivery shows that the same weighed 25,869 pounds, which at 16.52 cents per pound would amount to $4,273.55, which is the amount of the draft paid by Sweeney for this cotton. Sweeney testified that the contract price for the September delivery was 14.90 cents per pound middling basis; that the contract price for the October delivery was as alleged by him. He denied that it was customary to buy on compress weights and testified that he did not buy the Gass cotton on compress weights. He stated that he bought only on yard weights.

It is assigned as error that the court erred in refusing to submit the following special issues requested by Gass, viz.:

(1) Was the October lot of 50 bales shipped for an agreed price?

(2) If the foregoing question is answered in the affirmative, then state for what price it was shipped.

(3) Was there a difference in defendant's favor between the scale and compress weights?

(4) If you answered the foregoing question in the affirmative, then state what was the difference in weight and the value of same.

[1, 2] Both parties admitted that the October delivery was purchased at an agreed price. The only issue in this respect was as to the amount of the agreed price. There was therefore no necessity to submit the first requested issue, and the court was authorized in assuming that there was an agreed price. The amount of such agreed price was submitted by the court which is the point covered by the second requested issue. Hence there was no error in refusing to submit such second issue.

It will be observed from the statement made, there were only three issues in this case, viz.:

(1) The price agreed upon for October delivery. This issue was submitted by the court and found by the jury to be 15.65 cents per pound.

(2) Whether the cotton was sold under an agreement that the compress weights were to govern instead of yard weights.

(3) If compress weights were to govern, then would such weights exceed the yard weights and if so, how much.

[3] If there had been a proper request for the submission of these last two issues, the refusal thereof would have constituted reversible error. The third and fourth requested issues do not properly present the same. They do not cover the question of whether there was an agreement that compress weights were to govern, and that the weights were subject to correction in that respect. To simply ask the jury if there was a difference in defendant's favor between scale and compress weights was not proper. It called for a finding upon a question of law rather than an issue of fact, which it is the sole province of the jury to pass upon.

[4] The issues upon this phase of the case were as stated above, and, since requested issues 3 and 4 did not properly present the same, their refusal was not error. And since the evidence is conflicting as to whether there was an agreement that the sales were subject to correction in weights and that the compress weights were to govern, it must be presumed in support of the judgment that the trial court found that there was no such agreement. Article 1985, R. S.

In the state of this record, we think no reversible error is shown by the refusal of the requested issues.

The second, third, and fourth assignments complain of rulings on evidence. We think they present no error, but, if so, it is not reversible.

There is no merit in the fifth, which asserts that the judgment is contrary to the law, and unsupported by the evidence.

Affirmed.

HARPER, J. concurs. WALTHALL, J., did not sit, being absent on committee of judges assisting the Supreme Court.